(Hamilton County Common Pleas.)
February, 1901.

THE STATE OF OHIO ex rel. George E. Goff v. THE BOARD OF EDUCATION OF SPECIAL DISTRICT NO. 6, COLUMBIA, and NO. 8, SYCAMORE TOWNSHIP, Hamilton County, Ohio.

---

The act known as the Boxwell law is constitutional, but directory in its character; and the duties imposed upon school boards cannot, therefore be coerced by the court.

---

SPIEGEL, J.

This is an action instituted by Mr. George E. Goff, father of Ethel and Stanley Goff, praying for a writ of mandamus to command the board of education of the special school district No. 6 of Columbia township and No. 8 of Sycamore township, of which district the relator is a citizen, to appropriate the money sufficient for the payment of tuition of his children, who attend the high school at Madisonville in this county, and pay the same to said district, said children having complied with all the provisions of sections 4028-1 of the Revised Statutes, being section 1 of an act commonly known as the Boxwell law, the text of which is as follows:

"(4029-1). Section 1. Each board of county school examiners shall hold examinations of pupils of the sub-districts and special districts in the subjects of orthography, reading, writing, arithmetic, geography, English grammar, United States history and physiology. Two such examinations shall be held at such place, or places, and on such dates as the board of county examiners may determine, and shall be of such a char-

acter as shall permit the successful applicants, upon the payment of tuition, to enter any high school in the county in which the applicant resides, or in any adjoining county. The tuition of such successful applicant shall be paid by the board of education of the township or the special district in which such applicant resides; provided that there is no high school maintained and supported by the township or special district in which such pupil resides, where such pupil may attend without paying tuition.

"(4029-2). Section 2. The clerk of the township board of education shall provide for holding a township commencement at some place within the township, and shall appoint a teacher of the township to have charge of the same. At this commencement each successful applicant shall be required to deliver an oration or declamation or read an essay. The board of county school examiners shall provide for the holding of a county commencement at such time and place as they may determine. At this commencement there shall be delivered an annual address provided by the county board of school examiners, at the conclusion of which a diploma shall be presented to each successful applicant who has complied with the provisions of this act.

"(4029-3). Section 3. The tuition of such graduates as may attend any village or city high school of the county may be paid by the board of education of the special or township districts in which such pupils may reside.

"(4029-4). Section 4. The compensation of the county examiners, for their official services, and the necessary contingent expenses incident to examinations and commencements, shall be paid out of the county treasury in manner provided in section 4075 of the Revised Statutes; provided, however, that the expenses of the township commencements shall be paid by the township board of education."

To this, the defendant has filed an answer admitting the facts alleged in the petition, but denying the capacity of the relator to sue in mandamus, and claiming furthermore that the law is void because it is not uniform throughout the state; because it benefits a certain class, to-wit, those provided for in the act; because it provides for the education of a small percentage of the children of the state in the higher branches at the expense of a large body of its children in the lower branches, and finally because it is an effort on the part of the legislature to administer the affairs of the school districts without any discretion on the part of the local board.

To this answer a demurrer has been filed by the relator, and the cause is therefore for hearing upon its merits.

Determining first whether this suit in mandamus is properly brought, I may state as a well-known principle of modern jurisprudence that the remedy by mandamus is a civil remedy in its nature, one which is used for the protection of purely civil rights. There seems to be no reason why the proceedings should not be conducted, as in ordinary civil actions for the protection of private rights, merely in the name of the actual parties in interest as plaintiff and defendant; but in our state the rule prevails that from the nature of the writ as a command issuing from the sovereign power, it is properly prosecuted in the name of the state as the sovereign, upon the relation of the actual party in interest. And while the authorities are somewhat conflicting, the decided weight of authority supports the proposition, that when the relief is sought merely for the protection of private right, the relator must show some personal or special interest in the subject matter, since he is regarded as the real party in interest, and his right must clearly appear. In the case at bar, the plaintiff, as father, is the natural guardian of the children, charged with their education, and therefore has a personal and special interest in the subject matter of the suit, and has properly brought his action in mandamus.

Counsel for defendant claims that the law under which this suit is brought is unconstitutional, and therefore void, because it contravenes section 26 of article II of the constitution, which provides that all laws of a general nature shall have a uniform operation throughout the state, and because it contravenes section 6 of the constitution, providing that the general assembly shall make such provisions by taxation or otherwise, as with the income arising from the school trust fund, will secure a thorough and efficient system of common shools throughout the state.

The first objection, that this act contravenes section 26 of article II of the constitution, providing that all laws of a general nature shall have a uniform operation throughout the state, is not well taken. I do not care to enter into a long discussion of this objection, beyond saying that this constitutional provision has received a settled interpretation in this state to the effect that an act to meet this obligation must have "the same operation in all parts of the state under the same circumstances and conditions." The number of persons upon whom the law shall have any direct effect may be very few by reason of the subject to which it relates; but if it operates equally and uniformly upon all brought within the circumstances for which it provides, it com-

plies with the constitution. The organic law of our state clothes the general assembly with the power to pass laws upon the subject of schools. In conformity therewith, the latter has enacted laws dividing the state into school districts, called, respectively, a township district, a sub-district, a special school district, a village district, or a city school district of different grades. This classification is held constitutional upon the ground that grouping in classes is justifiable where, by reason of the existence of a substantial difference between different localities general laws would be inappropriate to some, while it would be appropriate to others. In such case, the localities in which the peculiarity exists would constitute a class, and the legislation would, in fact, be general, because it would apply to all to which it would be appropriate; and if the law has a uniform operation upon the persons or things of any class upon whom or which it purports to take effect, and does not grant to any person or class of persons privileges which, upon the same terms, shall not equally belong to all persons, then it is constitutional. Applying these rules to the Boxwell law, we find that it has all the earmarks of a constitutional enactment, giving to the children in the country districts the same high school advantages which the children in our cities receive, in accordance with general laws passed to suit the emergencies of these localites.

The next objection, that the act is opposed to section 2 of article VI of the constitution, providing that the general assembly shall make such provisions by taxation or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state, is based upon the ground, first, that the defendant provides for the general education of all children in said special school district between the ages of six and twenty-one years, and second, that said act takes away from said defendant all discretion in the expenditure of its money, and compels said board, without any investigation, and arbitrarily, to pay the tuition for the higher education of children, whether or not in their opinion, and as a matter of fact, it would be best for the interests of the children in said district that the money should be expended for the general education of said children, instead of the higher education, and would deprive said children of a proper general education.

Counsel for defendant lays stress upon the fact that the constitution authorizes a common school system throughout the state, and laws passed by the general assembly must be in accordance with this educational scheme.

Even were section 2 of article VI the only constitutional provision upon this subject, still the question, what a common school education is, must be left to the general assembly, to determine in accordance with the needs of the age, which have long since superseded the three R's. But the constitution has a further provision upon the subject of education, to-wit, section 7 of article I, wherein it is made the duty of the general assembly, knowledge being essential to good government, to pass suitable laws to encourage schools and the means of instruction. This objection may therefore be dismissed as not well founded.

The second reason advanced by counsel for defendant for the unconstitutionality of the act is based upon this alleged fact, that the law is a usurpation of power by the legislature to administer the duties of the local boards of directors of the special school district, leaving it no voice in the matter at all. In State ex rel. v. Commissioners, 54 Ohio St., 340, our supreme court has again laid down the wholesome rule, enunciated by Judge Cooley, that "local self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument. And if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continance in view."

And Judge Minshall says: "The system of local self-government existed under general laws at the adoption of the present constitution; and there is nothing in it, nor in any of its provisions, from which a design can be inferred to in any way impair it; on the contrary, every provision of that instrument in any way related to the subject manifests a purpose to preserve it unimpaired to the people."

This objection, therefore, is a very serious one, and deserving of a very serious consideration, should I find the law to be mandatory, leaving no discretion in the school board, but compelling it to pay the tuition of these applicants for a high school education, notwithstanding the fact that the act in question makes no provision, by taxation or otherwise, for raising the necessary funds for this additional expense. It will be seen that section 1 of the act is mandatory in its provisions, using the word "shall," whereas section 3 is directory, using the word "may." The rule of construction adopted by courts in cases of doubtful meaning is to so interpret the law that it will not violate the intent of the constitution, and yet carry out the will of the law-making body; for it is not to be presumed that the legislature would intentionally violate the fundamental principles of our

government, as contained directly or impliedly in our constitution. It is in the last degree improbable that the legislature would thus overthrow fundamental principles infringing rights or depart from the general system of law, without expressing its intention with irresistible clearness, to-wit, in the case at bar, amending not only section 1, but also section 3, of the Boxwell law, the latter section having been left directory, as the law has been since 1892, when first passed, section 1, containing the identical provisions as section 3, only having been made mandatory. It is therefore an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be construed as strictly limited to the immediate objects of the act, and as not altering the general principles of the law. An act in which the legislature makes both words, "shall" and "may," applicable to the same subject matter, will be construed to be mandatory only where public interest or rights are concerned—where the public or individuals have a claim de jure that the power should be exercised, or where something is directed to be done for the sake of justice or the public good. In such cases only an intent is to be inferred that, in using both a facultative and mandatory phrase for the performance of the same act, the legislature really meant to enjoin an imperative duty. But where, as in the case at bar, there is no design manifest to do something required by the purposes of justice, where the entire public has no interest or concern with the execution of the power conferred; and where no pre-existing private rights are affected by its failure; there is no room for an inference that the general assembly. in using both permissive and mandatory language, intended to give it a compulsory significance; nay, it is even more reasonable to assume that, in using language madatory in its strict grammatical sense in one instance, it attached to it the meaning and effect of permissive words only. And this construction seems to be also borne out when we take into consideration the further fact that the general assembly provided no extra means for the payment of this high school tuition but leaves each school board in order to obtain the necessary funds, to the levy heretofore authorized by law, although such levy may only be sufficient for general school purposes.

In thus construing the statute to be, what it has been ever since its adoption, directory in principle, I am but carrying out the will of the law-makers without violating well-recognized canons of contruction; and the law, thus interpreted, will enable country school

[COPYRIGHT, 1901, BY CARL G. JAHN.]

VOL. 8—14

districts, if its tax levy should be sufficient, and this should be the wish of its citizens, to apportion part of its school tax levy for this higher education of its children.

Under this finding, it will not be necessary to discuss the other questions raised by counsel.

The demurrer to the answer must be sustained, the court finding the act valid; but as the demurrer searches the entire record, and all the facts are before the court, it is ordered that the petition be dismissed, and judgment entered for the defendant, because the performance of the duty imposed upon the latter rests within its sound discretion, and can not be coerced by the court.

F. L. Hoffman and R. A. LeBlond.
Louis Reemelin and H. H. Hosbrook.